[Dkt. No. 11]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |
|---|---|
| JEFFREY FERREN,<br><br>        Plaintiff,<br><br>            v.<br><br>FOULKE MANAGEMENT CORP., et al.,<br><br>        Defendants. | Civil No. 15-3721 (RMB/AMD)<br><br>**OPINION** |

APPEARANCES:

**Kevin M. Costello**
**Daniel T. Silverman**
Costello & Mains, P.C.
18000 Horizon Way
Suite 800
Mt. Laurel, NJ 08054
    *Attorney for Plaintiff*

**Laura D. Ruccolo**
Capehart & Scatchard, PA
8000 Midlantic Drive
Mt. Laurel, NJ 08054
    *Attorney for Defendants*

**BUMB**, United States District Judge:

This matter comes before the Court upon a motion for summary judgment by Defendants Cherry Hill Triplex and Foulke Management Corporation ("Defendants").  This matter was filed by Plaintiff Jeffrey Ferren ("Plaintiff") in New Jersey State Court before it was removed to this Court by Defendants.  (Notice of

Removal [Dkt. No. 1]).  In the Complaint, [Dkt. No. 1-2],
Plaintiff asserts a series of seven employment discrimination
claims under the New Jersey Law Against Discrimination ("NJLAD")
and Family Medical Leave Act ("FMLA"), and a miscellaneous claim
for "equitable relief."

## I.    FACTUAL BACKGROUND

In 2001, Plaintiff became employed by Defendant Foulke
Management Corporation as a lot attendant at Cherry Hill
Mitsubishi, which is owned and operated by that defendant.
(Defs.' St. of Facts and Pl.'s Resp.  ("SOF") at ¶ 3, 11 [Dkt.
Nos. 11-3, 13]).  During Plaintiff's employment, he was
responsible for cleaning up the lot and other general customer
service tasks.  (Id. ¶ 4).

In October 2014, Plaintiff went on FMLA leave for a
shoulder injury.  (Id. ¶ 11).  Prior to taking leave, Plaintiff
informed his supervisor, Chris Kehner, that he would be having a
procedure done to address the injury. (Pl.'s Ex. G ("Kehner
Dep.") 18:25-19:17).  Defendant Foulke Management was also made
aware that Plaintiff was going on FMLA leave.  (Pl.'s Ex. D).
After the procedure was performed, on December 29, 2014,
Plaintiff spoke with Mr. Kehner about returning to work on
January 5, 2015.  (Pl.'s St. of Facts & Defs.' Resps. ("2d SOF")

¶¶ 9, 10 [Dkt. Nos. 13, 17]).[1]  During that conversation,
Plaintiff presented Mr. Kehner with a doctor's note detailing
his physical restrictions once he returned to work on January 5,
2015.  (Kehner Dep. 25:11-26:7; Pl. Ex. F).  These restrictions
dictated that Plaintiff was to lift no more than five pounds,
was to perform no overhead activities or climbing and should
only engage in limited use of his right upper extremities and
hand.  (Pl. Ex. F).  Upon receipt of the doctor's note, Kehner
told Plaintiff to "go home and get better."  (2d SOF ¶ 10).  The
parties agree that on December 29, 2014, Plaintiff was not told
that he was laid off from his job, nor does any comment
inconsistent with Plaintiff's continued employment appear to
have been made.  The parties further agree that "[t]here were no
restrictions in the doctor's note provide[d] to Mr. Kehner by
Plaintiff [on December 29, 2014] that would have prevented
Plaintiff from performing his job duties[.]"  (SOF ¶ 41).

    Instead of returning to work, however, Plaintiff was laid
off on January 5, 2015 by Mr. Kehner.  (Id. ¶ 18; Pl.'s Ex. A
("Ferren Dep.") 50:8-10).  Plaintiff admits that Defendant
Foulke Management Corp. typically laid workers off in January if
business was slow, but he also contends that in his thirteen

─────────────

[1] Although Defendants dispute this factual allegation as stated
in Paragraph 10 of Plaintiff's statement of facts, they do not
genuinely dispute that the parties spoke.

3

years he had never been laid off due to seasonal business needs. (Ferren Dep. 47:8-17). Defendants contend that they laid off Plaintiff because another employee, Roberto Roblez, managed to complete his own duties as well as Plaintiff's while Plaintiff was on leave. Thus, the Defendants contend that they realized they could save costs by laying off Plaintiff and having Mr. Roblez continue with his own and Plaintiff's responsibilities. (SOF ¶ 50; Kehner Dep. 24:13-16). Mr. Kehner asserted at his deposition that Mr. Roblez, rather than Plaintiff, received the consolidated position because Mr. Roblez was more "qualified," meaning that the technicians preferred Mr. Roblez because he kept the shop cleaner. (SOF ¶ 48, 49; Kehner Dep. 32:17-33:9; Pl.'s Ex. B ("Foulke Dep.") 22:1-8). Plaintiff alleges that he was laid off, however, because he took FMLA leave for the first time and because he was perceived as disabled by his employer. (Ferren Dep. 114:22-116:9).

## II.   <u>LEGAL STANDARD</u>

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." 14 Fed. R. Civ. P. 56(a). A fact is "material" if it will "affect the outcome of the suit under the governing law . . . ." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute is

4

"genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party."  Id.

When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party."  Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983).  However, a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial.  Anderson, 477 U.S. at 252.  Further, a court does not have to adopt the version of facts asserted by the nonmoving party if those facts are "utterly discredited by the record [so] that no reasonable jury" could believe them. Scott v. Harris, 550 U.S. 373, 380 (2007).  In the face of such evidence, summary judgment is still appropriate "where the record . . . could not lead a rational trier of fact to find for the nonmoving party . . . ."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P.

5

56(c)).  Then, "when a properly supported motion for summary
judgment [has been] made, the adverse party 'must set forth
specific facts showing that there is a genuine issue for
trial.'"  Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P.
56(e)).  The non-movant's burden is rigorous: it "must point to
concrete evidence in the record"; mere allegations, conclusions,
conjecture, and speculation will not defeat summary judgment.
Orsatti v. N.J. State Police, 71 F.3d 480, 484 (3d Cir. 1995);
Jackson v. Danberg, 594 F.3d 210, 227 (3d Cir. 2010) (citing
Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228
(3d Cir. 2009)) ("[S]peculation and conjecture may not defeat
summary judgment.").

III.  **ANALYSIS**

A. **NJLAD Failure to Accommodate (Count I)/NJLAD Failure to
   Engage in Interactive Process (Count II)**

Plaintiff's first and second causes of action allege that
Defendants[2] failed to accommodate his disability and did not
engage in an interactive process in violation of the NJLAD.[3]

---

[2] Although the facts appear to establish that Plaintiff was
specifically employed by Defendant Foulke Management Corp.,
Defendants do not contend that Defendant Cherry Hill Triplex
should be dismissed from the action.  As such, the Court does
not address the issue here.

[3] No party makes a distinction between the two causes of action
in terms of the showing that Plaintiff must make for Count I
versus Count II, and case law suggests that failure to engage in
the interactive process is one form of failure to accommodate.
Tourtellotte v. Eli Lilly & Co., 636 Fed. App'x 831, 850 (3d
Cir. 2016) ("Once a plaintiff has established a prima facie case

6

Under the NJLAD, an employer must make reasonable accommodations "to the limitations of an employee or applicant who is a person with a disability, unless the employer can demonstrate that the accommodation would impose an undue hardship."  13 N.J.A.C. § 13-2.5.  When an employee requests an accommodation for a disability, the employer has a responsibility "to 'engage the employee in the interactive process of finding accommodations.'"  Bertolotti v. AutoZone, Inc., 132 F. Supp. 3d 590, 602 (D.N.J. Sep. 22, 2015) (quoting Armstrong v. Burdette Tomlin Memorial Hosp., 438 F.3d 240, 246 (3d Cir. 2006)).

In the context of a failure to accommodate claim, a Plaintiff must first establish a prima facie case of disability discrimination.[4]  Tourtellote v. Eli Lilly and Co., 636 Fed. App'x 831, 849 (3d Cir. Jan. 13, 2016); Boles v. Wal-Mart Stores, Inc., Civ. A. No. 12-1762 (JLL), 2014 WL 1266216, at *12 (D.N.J. Mar. 26, 2014) ("In a failure to accommodate case of disability discrimination, a plaintiff must first present the

of disability discrimination, in a failure to accommodate claim the plaintiff must establish four elements 'to show that an employer failed to participate in the interactive process.'" (quoting Victor v. State, 203 N.J. 383, 415 (2010)). Accordingly, the Court treats the two causes of action as one in its analysis.
[4] The analysis for disability discrimination is conducted pursuant to the well-known McDonnell Douglas burden-shifting standard.  Because Plaintiff has not made out a prima facie case, the Court does not outline the full contours of the standard in this section.

prima facie elements required in any NJLAD disability

discrimination claim" (alterations omitted)).  Those elements

are that the plaintiff: (1) was disabled within the meaning of

the statute; (2) was qualified to perform the essential

functions of his employment, with or without accommodation; and

(3) suffered an adverse employment action because of the

disability.[5] Conoshenti v. Public Serv. Elec. & Gas Co., 364

F.3d 135, 150 (3d Cir. 2004) (discussing interactive process

requirements).

Thereafter, in the context of an accusation that the

defendant failed to engage in an interactive process concerning

accommodation, the plaintiff must demonstrate four additional

elements: (1) the employer knew about the plaintiff's

disability; (2) the plaintiff requested accommodations or

assistance for his or her disability; (3) the employer did not

---

[5] The Court notes that Plaintiff makes much of the decision by
the Supreme Court of New Jersey Victor v. State, 203 N.J. 383
(2010) in which it was held that the prima facie showing for a
failure to accommodate claim may not require the showing of an
adverse employment action.  That issue, however, is not central
Defendants' arguments for dismissal, which deal with the
requirement of a good faith effort to assist Plaintiff in
seeking accommodation and that the employee could have been
reasonably accommodated but for any lack of good faith.  (Defs.'
Br. at 7-9; Defs.' Rep. Br. at 4-5).  While Defendants do assert
in their opening brief that Plaintiff "is unable to establish
that he suffered an adverse employment action," they make this
argument on their broader theory of the case, that Plaintiff's
termination a week after requesting accommodation cut off their
need to engage in an interactive process.

make a good faith effort to assist the plaintiff in seeking
accommodations; and (4) the plaintiff could have been reasonably
accommodated but for the employer's lack of good faith.  Id. at
849 (internal citations and alterations omitted); Linton v.
L'Oreal USA, Civ. A. No. 06-5080 (JLL), 2009 WL 838766, at *3
(D.N.J. Mar. 27, 2009).  The Court focuses on the final two
elements of the prima facie case of failure to accommodate in
the context of engaging in an interactive process:  that the
employer did not make a good faith effort to assist the employee
in seeking accommodations and that the employee could have been
reasonably accommodated but for a lack of good faith.

    This case presents an atypical fact pattern for these
claims, as both parties do not dispute that Plaintiff was able
to perform the job he previously had.  Instead, the parties
agree that Plaintiff's doctor's note either did not implicate
Plaintiff's actual job requirements or that the doctor's note's
requirements could be easily accommodated in Plaintiff's current
position.  (SOF ¶ 41).  This is best summarized by the factual
assertion in the Statement of Facts that both parties do not
dispute: "There were no restrictions in the doctor's note
provide[d] to Mr. Kehner by Plaintiff that would have prevented
Plaintiff from performing his job duties; there was no position
for [Plaintiff] because his position had been eliminated."
(Id.).  So, regardless of whether Plaintiff was actually seeking

accommodations rather than just informing Mr. Kehner of his
return date, the parties agree he could have done the job with
or without accommodations.  As such, the Court is not in a
position to find that the employer "did not make a good faith
effort to assist the employee in seeking accommodations," when
the Plaintiff agrees he was able to perform the job and does not
point to any deficient process or accommodation that was denied
by the Defendants.  See Peacock v. Albertsons Acme Markets, 607
F. Supp. 2d 694, 700 (D.N.J. Apr. 16, 2009) ("The record
contains no evidence from which a reasonable factfinder could
find (or infer) that [the defendant] refused any accommodation
or required [the plaintiff] to perform tasks she was restricted
from performing.").

     Tellingly, Plaintiff only points to Mr. Kehner's testimony
that Plaintiff could have worked with the restrictions provided
in the doctor's note in support of the notion that Plaintiff was
not accommodated or provided with an interactive process wherein
he could be accommodated.  (Pl.'s Br. at 7).  However, other
than the fact that Plaintiff was shortly thereafter terminated,
the record is devoid of evidence of a lack of good faith, such
as testimony that Mr. Kehner knew the doctor's note was a
request for accommodation, that Mr. Kehner believed
accommodation would actually be required, or that Defendants

were unwilling to accommodate the Plaintiff.[6]  A plaintiff's
failure to identify accommodations that might have been made,
but were denied, has been found fatal to a failure to
accommodate claim in the ADA context.  Donahue v. Consolidated
Rail Corp., 224 F.3d 226, 234 (3d Cir. 2000) ("[I]n a failure-
to-transfer case, if, after a full opportunity for discovery,
the summary judgment record is insufficient to establish the
existence of an appropriate position into which the plaintiff
could have been transferred, summary judgment must be granted in
favor of the defendant-even if it also appears that the
defendant failed to engage in good faith in the interactive
process"); see also Mengine v. Runyon, 114 F.3d 415, 420 (3d
Cir. 1997) ("The ADA, as far as we are aware, is not intended to
punish employers for behaving callously if, in fact, no
accommodation for the employee's disability could reasonably
have been made." (quoting Willis v. Conopco, Inc., 108 F.3d 282,
285 (11th Cir. 1997)).[7]  Here, the undisputed record is that

---

[6] The Court is unpersuaded that the hiring of another person to
work the lot at night is evidence of an accommodation denied to
Plaintiff because the factual record indicates that this hiring
was done prior to Plaintiff's production of the doctor's note.
(2d SOF ¶ 12 ("Mr. Kehner did advise plaintiff that he had hired
someone to work the lot at night and plaintiff asked why he
could not do that light duty.")).
[7] To the extent that Plaintiff's argument is that he could have
returned to work on December 29, 2014 with accommodations,
despite his doctor's note which indicates a return to work date
of January 5, 2015, Plaintiff has pointed to insufficient
evidence to establish a lack of good faith on the part of

Plaintiff took FMLA leave and was able to return to work in his job, potentially requiring accommodations to do so, but at no time were those accommodations denied.  On the day he was scheduled to return from FMLA leave he was laid off.  This fact pattern may give rise to a claim of wrongful discharge or FMLA/NJLAD retaliation, see infra, but it does not provide the factual basis needed to show a lack of good faith for element three or four of a failure to accommodate or engage in an interactive process claim.

In light of the uncontested factual admission that Plaintiff would have been provided accommodation prior to his termination, and the lack of evidence suggesting a lack of good faith, the Court will GRANT Defendants' motion for summary judgment on Plaintiff's claims of failure to accommodate (Count I) and failure to engage in an interactive process (Count II).

---

Defendants in refusing this accommodation request in light of Mr. Kehner's testimony that he believed any of the restrictions requested in the doctor's note could be accommodated in Plaintiff's current employment.  Plaintiff concedes that his return date from FMLA was January 5, 2015.  (SOF ¶ 17).  Plaintiff concedes he was not cleared by his doctor to return to work prior to January 5, 2015.  (2d SOF ¶ 9).  As Defendants properly note, "[b]ecause Mr. Ferren was unable to work at all between December 29, 2014 and January 5, 2015, there was nothing that Foulke Management Corp. could have done to accommodate Mr. Ferren during that time period."  Plaintiff's arguments concerning "100% healed" policies, (Pl.'s Br. at 6-7), are unavailing because there is no evidence in the record to suggest that Plaintiff could have returned to work on December 29, 2014, even at less than 100%.

**B. <u>NJLAD Discriminatory Discharge (Counts III and IV)</u>**

Plaintiff's third and fourth causes of action are for discriminatory discharge on the basis of disability (Count III) or perceived disability (Count IV) under the NJLAD.  The NJLAD prohibits employment discrimination on the basis of disability or perceived disability.  Discriminatory discharge under the NJLAD follows the framework outlined in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  If a plaintiff's claim is based upon discriminatory discharge for disability, the <u>prima facie</u> case requires a plaintiff to show: (1) that he had a disability within the meaning of the NJLAD; (2) that he was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; (3) that he suffered an adverse employment action; and (4) that the employer sought someone else to perform the same work.  <u>Tourtellotte v. Eli Lilly & Co.</u>, 636 Fed. App'x 831, 848 (3d Cir. 2016).  After a plaintiff demonstrates his <u>prima facie</u> case of discriminatory discharge, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action.  <u>Id.</u> at 842.  After the employer does so, the burden shifts back to the employee to show that the employer's proffered reason was merely a pretext for discrimination.  <u>Id.</u> To survive summary judgment, a plaintiff must either discredit the defendant's proffered reasons or produce evidence that

13

discrimination was more likely than not a motivating or
determinative cause of the adverse employment action.  Id.  To
rebuff the defendant's stated reason at the summary judgment
stage, a plaintiff must "point to some evidence, direct or
circumstantial, from which a factfinder could reasonably either
(1) disbelieve the employer's articulated legitimate reasons; or
(2) believe that an invidious discriminatory reason was more
likely than not a motivating or determinative cause of the
employer's action."  Id. (citing Tomasso v. Boeing Co., 445 F.3d
702, 706 (3d Cir. 2006).  In this context, the plaintiff must
"demonstrate such weaknesses, implausibilities, inconsistencies,
incoherencies, or contradictions in the employer's proffered
legitimate reasons for its action that a reasonable factfinder
could rationally find them unworthy of credence, and hence infer
that the employer did not act for the asserted nondiscriminatory
reasons."  Id. (internal quotation marks and alterations
omitted).

     Defendants first contend that Plaintiff cannot make out a
prima facie case of discriminatory discharge based on disability
or perceived disability because it is disputed that Plaintiff
was performing his job at a satisfactory level.  Defendants'
one-sentence argument is that Plaintiff had received both verbal
and written warnings during his employment with Defendants.
Defendants concede, however, that Plaintiff had worked for

14

thirteen years in his position without ever being laid off.
(SOF ¶¶ 3, 24).  Further, Defendants' own statement of facts
contains the allegation that "[t]he business reason for the
elimination of Plaintiff's position was economic in that Mr.
Kehner realized that one person could do both shops and save the
company a substantial amount of money."  (SOF ¶ 50).  This
justification differs from the argument that Plaintiff was a bad
employee or was not doing his job satisfactorily.  Plaintiff had
not been disciplined for over two years prior to his
termination.  Put simply, whether he was performing his job at a
sufficient level is a disputed fact, but Plaintiff has carried
his burden at summary judgment.

Defendants next argue that even if Plaintiff has
established his prima facie case of discrimination, they have
articulated a legitimate, non-discriminatory reason for
Plaintiff's lay off.  Specifically, Defendants contend that they
"downsized and eliminated Plaintiff's position by consolidating
his job duties with that of another employee as a cost savings
measure."  (Defs.' Br. at 12).  Defendants argue that Plaintiff
cannot demonstrate that this legitimate business reason was
pretextual: "Plaintiff's testimony was clear, the only reason he
believes he was laid off was because he never took leave before
and was never laid off before."  (Id. at 13).

Despite Defendants' contentions, Plaintiff has succeeded in producing evidence from which a jury could find this reason is pretextual.  Plaintiff was laid off very shortly after presenting documentation of his injury—one week after.  Indeed, Plaintiff's lay-off happened the very day he was to return from work for his disability.  A jury could find it implausible and inconsistent that an employer – having had months of Plaintiff's absence to determine that Plaintiff's position was able to be assumed by Mr. Roblez – is only feigning a business reason when it terminates an employee the very day he is to return from his surgical procedure.  Compounding that evidence, Plaintiff's thirteen-year employment, during which time no suggestion was made that he might be a redundant employee despite lay-offs having happened before, is also supportive of pretext. Moreover, the fact that on December 29, 2014, Mr. Kehner was made aware of Plaintiff's return and medical ailments and said nothing of laying him off, and yet, a mere week later Defendants had determined not only that Plaintiff's position was redundant but that he should be terminated rather than brought back, is corroborative of pretext.  Finally, that Plaintiff's duties were assumed by an employee who had never taken FMLA leave and was not disabled underscores the notion that material facts are disputed in the realm of pretext and that those facts should be decided by a jury and not the Court.  When the facts are viewed

16

in the light most favorable to him, Plaintiff has carried his burden.  This is not to say, however, that Plaintiff will prevail at trial.  Indeed, Defendants may well persuade a jury of the economics of their decision.  But at this juncture, summary judgment is denied.

As such, the Court rules that Defendants' motion for summary judgment on Plaintiff's discriminatory discharge claims (Counts III and IV) is DENIED.

## C. **Retaliatory Discharge Under the NJLAD (Count V) and FMLA (Count VI)**

To survive summary judgment on a claim of retaliation under the NJLAD or FMLA, the plaintiff must again look to the McDonnell Douglas burden-shifting framework.  A prima facie case of discriminatory retaliation under the NJLAD requires a plaintiff to demonstrate that: (1) he engaged in a protected activity that was known by the employer; (2) his employer unlawfully retaliated against him; and (3) his participation in the protected activity caused the retaliation.  Craig v. Suburban Cablevision, Inc., 140 N.J. 623, 629–30 (1995) (citation omitted).  The FMLA permits a retaliation claim requiring a substantially similar showing: "(1) [the plaintiff] invoked [his] right to FMLA-qualifying leave, (2) [he] suffered an adverse employment decision, and (3) the adverse action was

causally related to [his] invocation of rights." Budhun v.
Reading Hosp. & Med. Ctr., 765 F.3d 245, 256 (3d Cir. 2014).

Plaintiff has met his burden of demonstrating a prima facie
case of NJLAD and FMLA retaliation.  It is not disputed that
Plaintiff engaged in protected activity in taking FMLA leave.
See Schummer v. Black Bear Distribution, LLC, 965 F. Supp. 2d
493, 501 (D.N.J. 2013) ("Under the NJLAD, it is unlawful
discrimination for an employer to discharge an employee on
because of a disability or because he has engaged in a protected
activity, such as taking FMLA leave.").  It is also undisputed
that Plaintiff suffered an adverse employment action which could
amount to retaliation—he was terminated.

The element of the prima facie case which Defendants focus
on challenging most specifically is whether Plaintiff has met
his burden of establishing causation.  At summary judgment, the
Court finds Plaintiff has carried his burden.  Plaintiff was
fired the very day he was to return from FMLA leave and a week
after having provided a list of his limitations to his boss.
Taking all reasonable factual inferences in Plaintiff's favor,
this timing is "unduly" or "unusually" suggestive at the summary
judgment stage, which is sufficient. Lichtenstein v. Univ. of
Pitt. Med. Ctr., 692 F.3d 294, 307 (Aug. 3, 2012) ("When the
'temporal proximity' between the protected activity and adverse
action is 'unduly suggestive,' this 'is sufficient standing

alone to create an inference of causality and defeat summary
judgment.'"); Budhun, 765 F.3d at 258 (collecting cases on
"unusually suggestive" timing, including one finding such timing
three months after a request for FMLA leave).

Moreover, even if the timing were not unduly or unusually
suggestive, other evidence supports a finding of causation.
Budhun, 765 F.3d at 258 (noting that causation can be
established by "a pattern of antagonism coupled with timing to
establish a causal link"). When Plaintiff initially broached
the subject of returning from FMLA leave with his employer,
Plaintiff was told to return home and get better in anticipation
of his return a week later. One week later, Plaintiff was
terminated. This was despite the fact that the non-disabled Mr.
Roblez had completed Plaintiff's tasks the entire time he was
out. It is further undisputed that Mr. Roblez had never taken
FMLA leave. Plaintiff had never taken FMLA leave before and had
never been subjected to a seasonal layoff in thirteen years.
Such evidence coupled with the even mildly suggestive timing
would also underscore a finding of causation.

While Defendants have pointed to numerous facts that
militate against Plaintiff's FMLA leave being the cause of his
termination, such as layoffs being typically conducted in
January, those factual contentions are best resolved by a jury.
At summary judgment, Plaintiff has established his prima facie

case of retaliation.  For the same reasons stated above with regard to Counts III and IV, Plaintiff has also met his burden at summary judgment of showing that Defendants' stated non-discriminatory reason is pretextual.  Although the showing that Plaintiff has put forward at summary judgment is far from the strongest, and a jury could readily find against Plaintiff, it is sufficient to carry his burden of establishing that, if the facts are viewed in the light most favorable to him, a jury could find in his favor.  As such, the Court DENIES Defendants' motion for summary judgment as to Counts V and VI. [8,9]

## IV.  **CONCLUSION**

As set forth above, the Court GRANTS Defendants' motion for summary judgment on Counts I, II, VII and VIII.  The Court

---

[8] Plaintiff additionally states a cause of action for "Unlawful Discharge" under the FMLA (Count VII).  Although Plaintiff vaguely asserts that Count VII should not be dismissed at the conclusion of the section of his opposition brief concerning FMLA retaliation, Plaintiff makes no affirmative argument in an attempt to salvage the otherwise undiscussed Count VII.  As such, Defendants' motion for summary judgment on Count VII is GRANTED.  To the extent the Court has misconstrued Plaintiff's argument in this regard, he is, of course, permitted to seek reconsideration of the Court's decision, but he will be required to explain why he failed to make such arguments earlier.
[9] Plaintiff has also vaguely alleged a cause of action for "Equitable Relief" (Count VIII).  Defendants have sought summary judgment in their favor on this non-existent cause of action, and Plaintiff has not defended the cause of action in response to Defendants' motion.  The Court, as such, GRANTS summary judgment in Defendants' favor on this count.

DENIES Defendants' motion as to Counts III, IV, V, and VI.  An

appropriate Order follows.


DATED: February 16, 2017


                                    s/Renée Marie Bumb
                                    RENÉE MARIE BUMB
                                    UNITED STATES DISTRICT JUDGE