**IN THE UNITED STATES DISTRICT COURT
FOR THE DISCTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| JEFFREY FERREN,<br><br>        Plaintiff(s),<br><br>vs.<br><br><br><br>FOULKE MANAGEMENT CORP.;<br>CHERRY HILL TRIPLEX and JOHN<br>DOES 1-5 AND 6-10,<br><br>        Defendant(s). | :<br>:<br>:<br>:<br>:  Civil No.:  1:15-cv-03721<br>:<br>:  Jury Trial<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

---

### Joint Final Pretrial Order[1]

The following shall constitute the Final Pretrial Order pursuant to Rule 16, Federal Rules of Civil Procedure.  This Final Pretrial Order shall govern the conduct of the trial in this case.  Amendments to this Order will be allowed only in exceptional circumstances to prevent manifest injustice.  See Fed. R. Civ. P. 16(e).  Counsel are urged to move to amend in a timely fashion any portion of the Order that must be changed or modified between the filing of the Order and the trial date.

**Appearances:**

For Plaintiff Jeffrey Ferren:

Daniel T. Silverman, Esq.
Costello & Mains, LLC
18000 Horizon Way
Suite 800
Mount Laurel, NJ 08054
(t) 856-727-9700
(f) 856-727-9797

For Defendant Foulke Management Corp.:
Laura D. Ruccolo, Esq.
Capehart & Scatchard
8000 Midlantic Drive, Suite 300S
Mt. Laurel, NJ 08054
(t) 856-914-2004
(f) 856-235-2786

---

[1] This Order has been prepared in accordance with the model form of Order published at http://www.njd.uscourts.gov/sites/njd/files/pretrialorder%20camden.pdf

**Part I.**   <u>**Jurisdiction and Brief Summary of the Case:**</u>

<u>Jurisdiction:</u>   Plaintiff initiated this matter in the Superior Court of New Jersey, Camden County, alleging violations of the New Jersey Law Against Discrimination ("LAD") and Family and Medical Leave Act ("FMLA").   Defendant thereafter filed a Notice of Removal asserting that the matter was removable pursuant to 28 U.S.C. § 1331 as it involves a Federal question.   The matter has remained before the jurisdiction of this Court since.

<u>Brief Summary of the Case:</u>   Plaintiff was a long-term employee of the defendant car dealer, having been employed for approximately twelve years, working as a general and service lot attendant.   In or about July 2013, plaintiff suffered an injury to his shoulder while pulling stumps out of the ground.   He initially worked through the pain until he re-aggravated the injury in 2014, ultimately resulting in the need for surgery.   In October 2014, defendants approved plaintiff for FMLA leave and he in fact had his surgery performed.   Plaintiff was cleared by his doctor on December 29, 2014, to return to work, with restrictions, as of January 5, 2015.   On January 5, 2015, Defendant separated Plaintiff from employment.

Following completion of discovery, the matter was the subject of a Motion for Summary Judgment for which an Order was entered on February 16, 2017.   The Motion was granted as to Counts I, II, VII, and VIII but denied as to Counts III (Discriminatory Discharge on the Basis of Disability Under the LAD), IV (Discriminatory Discharge on the Basis of Perception Held Regarding Disability Under the LAD), V (Retaliatory Discharge Under the LAD), and VI (Retaliation Under the FMLA).

**Part II.**      <u>**Stipulated Facts:**</u>

1. Plaintiff was employed by the Defendant from March 1  2002 until January 5, 2015.

2. On October 27, 2014, Defendant approved Plaintiff's request for leave pursuant to the Family and Medical Leave Act for his own serious medical condition.

3. On December 29, 2014, Dr. Mark Schwartz cleared Plaintiff to return to work as of January 5, 2015.

**Part III.**      <u>**Plaintiff's Contested Facts:**</u>

1. Plaintiff intends to prove the following facts with regard to liability:

   a. Plaintiff was employed by the Defendant as a lot attendant from March 2002 until his termination on January 5, 2015.

   b. Although Defendant refers to service department lot attendants and sales department lot attendants, there is no difference between the two and all of the lot attendants chip to help each other.

   c. All of the lot attendants, whether sales or service, reported to Chris Kehner.

   d. In July 2013, Plaintiff suffered injury to his shoulder while pulling a stump from the ground.

   e. Plaintiff re-aggravated the injury to his shoulder in 2014 resulting in a rotator cuff tear and labral tear in his right shoulder.

f.  Plaintiff's injury necessitated surgery and medical leave from work for his own serious medical condition.

g.  Plaintiff requested and Defendant approved Plaintiff for FMLA leave.

h.  Plaintiff did, in fact, exercise the FMLA leave.

i.  Defendant's policies provide that if upon expiration of a FMLA leave of absence an employee is able to return to work, the employee will be returned to his former position, another comparable position for which he qualifies, or he will be treated the same as any other similarly-situated employee who does not take a leave of absence.

j.  On or about December 29, 2014, Dr. Mark Schwartz cleared plaintiff to return to work as of January 5, 2015 with restrictions.

k.  Plaintiff considered himself able to perform the essential functions of the job with the restrictions.

l.  Plaintiff delivered a copy of the December 29, 2014 note to Defendant's human resources department and Chris Kehner.

m.  On December 29, 2014, Plaintiff spoke with Chris Kehner, Defendant's Service Manager, about returning to work light duty, but Mr. Kehner did not discuss what tasks plaintiff could and could not perform, and instead told him to go home and get better.

n.  At the time Mr. Kehner did not advise that Plaintiff's position had been eliminated.

o.  When plaintiff inquired as to why he could not work light duty, Mr. Kehner advised that he had hired someone to work the lots at night.

p.  On January 5, 2015, Mr. Kehner advised plaintiff that plaintiff had been laid off because business was slow and the company was downsizing.

q.  On January 5, 2015, Plaintiff's was separated from employment with an indicated reason of "position eliminated."

r.  Plaintiff was shocked by the termination as he was aware of layoffs that would take place in the winter in the past, and throughout his 12 years of employment he had never been selected

s.  Shortly after his termination, Plaintiff called Charles Foulke, III, Defendant's General Manager, and asked why he had been laid off.

t.  Mr. Foulke stated that the company had done Plaintiff a favor by letting him get better and that they would let him collect unemployment benefits.

u.  Mr. Foulke stated that plaintiff should get better and then "come back and pick things up from there."

v.  Plaintiff was in continued contact with Mr. Kehner and Mr. Foulke in late February/early March 2015 during which he was advised that there was no available work for him.

w.  Following Plaintiff's termination, Plaintiff's duties were assumed by another employee, Roberto Robles.

x.  Mr. Robles is not known to have taken FMLA leave or to have suffered any disability during the course of his employment with the Defendant.

y.  Following Plaintiff's termination, Defendant advertised that it was hiring lot attendants.

z.  During the calendar year 2015, Defendant hired lot attendants.

aa. Kimani Goodwin, another lot attendant at the store where Plaintiff worked was not laid off or separated at the time of Plaintiff's separation.

bb. Mr. Goodwin is not known to have taken FMLA leave or to have suffered any disability during the course of his employment with the Defendant.

cc. During the last two years of his employment, Plaintiff had not received any form of discipline, including written discipline.

dd. During the course of his employment with Defendant, Plaintiff was raised from $8.00 per hour to $12.00 per hour.

ee. Defendant terminated Plaintiff in retaliation for his FMLA leave and/or because of his disability and/or because of perceptions held regarding Plaintiff as disabled.

ff. The decision to terminate Plaintiff was made by a member of upper management, Chris Kehner, and/or a member of upper management, Charles Foulke, III, was willfully indifferent to the same.

2.  Plaintiff intends to prove the following contested facts with regard to damages:[2]

    a.  At the time of his termination, Plaintiff was earning $12.00 per hour and working a regular schedule of 40 hours per week, with approximately 32-40 hours of overtime per month.

    b.  In March 2015, Plaintiff began searching for replacement employment.

    c.  In June 2015, Plaintiff began employment at Freedom Camden Charter Academy.

    d.  At Freedom Camden Charter Academy, plaintiff earns $12.00 per hour and works 28-30 hours per week during the school year and 40 hours per week in the summer.

    e.  During his employment and continuing after his separation, Plaintiff had a part-time position as a maintenance person with Bethany Baptist Church.

    f.  After his separation, Plaintiff requested additional hours from Bethany Baptist Church, but they did not have the budget for the same.

    g.  As a result of his termination, Plaintiff has experienced depression, aches and pains and a desire to be left alone, even from his family.

---

[2] Plaintiff's Complaint includes a demand and prayer for punitive damages under the LAD. Pursuant to *Herman Sunshine Chemical Specialties*, 133 N.J. 329 (1993) Plaintiff hereby requests to bifurcate the issue of punitive damages.

h. The termination had a negative impact on Plaintiff's relationship with his wife, and Plaintiff was upset that he was unable to provide for his daughters as he had before.

i. Defendant was malicious and/or acted with a wanton and willful disregard of Plaintiff's rights.

**Part IV.**   **Defendant's Contested Facts**

1. Defendant intends to prove the following contested facts with regard to liability:

i) A. Plaintiff was hired as a general lot attendant at the Mitsubishi store and responsible for cleaning up the lot and doing errands and picking up customers.

ii) Chris Kehner subsequently became the Service Manager at Cherry Hill Mitsubishi and became Plaintiff's supervisor. Plaintiff became a lot attendant of the Service department.

iii) Foulke Management has three stores in Cherry Hill; Cherry Hill Dodge, Cherry Hill Kia and Cherry Hill Mitsubishi. Plaintiff worked at the different stores throughout his employment, always in the Service Department. When Chris Kehner became the Service Manager at Cherry Hill Mitsubishi, Plaintiff went to work for the Service Department at Cherry Hill Mitsubishi and Plaintiff's responsibilities changed.

iv) There is a difference between lot attendants who work for the Service Department and lot attendants who work for the Sales Department.

v)    Plaintiff was a service lot attendant; he never worked in the Sales

Department.

vi)    When the lot attendants' positions were separated by sales and service, the

Plaintiff's job responsibilities changed and Plaintiff was required to clean

more, specifically cleaning the service shop at Mitsubishi.

vii)    Plaintiff went out on FMLA leave in October 2014.

viii)    Roberto Roblez took over Plaintiff's job responsibilities of cleaning the

Cherry Hill Mitsubishi Service Department and continued to perform his job

responsibilities in the Kia service department while Plaintiff was out on

FMLA leave.

ix)    Chris Kehner was Plaintiff's direct supervisor.

x)    During Plaintiff's FMLA leave, Chris Kehner realized that Mr. Roblez

performed Plaintiff's job duties better than Plaintiff and quicker than Plaintiff

at a cost savings to Defendant.

xi)    During his employment with Foulke Management, Plaintiff recalls

received both written and verbal reprimands regarding his performance.

xii)    The last merit increase Plaintiff received from Foulke Management was in

2008, six years before he was laid off.

xiii)    Plaintiff's return date from FMLA leave pursuant to his doctor's note, was

January 5, 2015.

xiv)    On December 29, 2014, Plaintiff told Chris Kehner he could return to

work on January 5, 2015.  Mr. Kehner told Plaintiff that his job had been

eliminated but that he would see if he could find an available position for him to return to.

xv)     Plaintiff received a telephone call from Chris Kehner on January 5, 2015 advising him that he was being laid off and he was unable to find another open position to put him in.

xvi)    Plaintiff agrees that it was typical of Foulke Management to lay people off in January, which is a slow time of year for Defendant's business.

xvii)   Plaintiff subsequently spoke to one of the owners of Foulke Management Corp. and was again told that his position had been eliminated and the company was down-sizing and, if a position opened up, Plaintiff could apply for it.

xviii)  Plaintiff has not looked or reapplied for any job with Foulke Management since he was laid off.

xix)    Plaintiff admits that he is not aware of any other employee who took FMLA leave and was laid off.

xx)     Plaintiff also concedes that other than being laid off while taking FMLA leave, he has no other reason to believe that he was laid off because he was disabled and took FMLA leave.

xxi)    Plaintiff expressed his belief that Foulke Management was not permitted to down-size and eliminate his position while he was out on FMLA leave.

xxii)   A lot attendant position was open at Foulke Management in July 2015, but Plaintiff did not apply for this position nor did he look to see if Foulke posted any other jobs.

xxiii)   Plaintiff had made a determination that he did not want to return to work for Defendant.

xxiv)   Plaintiff was terminated for financial reasons as it was determined that one employee (Roberto Roblez) was capable of performing the job that was being done by two employees resulting in a cost savings to Foulke Management Corp.

xxv)   Plaintiff was not the only individual who was laid off by Foulke Management in 2015.

xxvi)   Chris Kehner is employed by Foulke Management as the Service Manager at Cherry Hill Mitsubishi.

xxvii)   Mr. Kehner's responsibilities include the daily operations, including hiring and firing in the Service Department.

xxviii) Mr. Ferren's last position was a service maintenance lot man in the Mitsubishi store.

xxix)   Mr. Ferren's duties included cleaning the Mitsubish shop.

xxx)   Mr. Ferren was the only service maintenance lot man at Cherry Hill Mitsubishi.

xxxi)   There are other lot men that are employed by Foulke Management that perform different duties, such as moving cars around and picking up vehicles.

xxxii)   Mr. Ferren, as the service maintenance lot man for Cherry Hill Mitsubishi reported to Chris Kehner.

xxxiii) One other service lot man reported to Chris Kehner.

xxxiv) Sales lot attendants did not report to Chris Kehner.

xxxv) Mr. Roblez who took over Plaintiff's job duties at Cherry Hill Mitsubishi held the title of service maintenance lot attendant at Cherry Hill Kia.

xxxvi) There were no restrictions in the doctor's note provided to Mr. Kehner by Plaintiff that would have prevented Plaintiff from performing his job duties; however, there was no position for him because his position had been eliminated.

xxxvii) Mr. Foulke had no part of the decision to terminate Plaintiff.

xxxviii)      On December 29, 2014, Mr. Ferren was told by Chris Kehner that he would investigate whether there were any other positions available for Plaintiff to come back to.

xxxix) Mr. Kehner did attempt to see if there were any positions open for which Plaintiff could fill and nothing was available.

xl)      Roberto Roblez continues to perform both his job functions and those previously performed by Plaintiff.

xli)      The service maintenance lot positions at Kia and Mitsubishi were consolidated.

xlii)      Mr. Roblez's supervisor at Cherry Hill Kia agreed to allow the two job positions to be consolidated.

xliii)      Each Service Department had their own budgets.

xliv)      Chris Kehner did consider Plaintiff for the consolidated position but felt that Roberto Roblez was more qualified.

xlv)      In Mr. Kehner's opinion Mr. Roblez did a better job and he got a lot of positive feedback from the technicians on how clean the shop was.

xlvi)   The business reason for the elimination of Plaintiff's position was economic in that Mr. Kehner realized that one person could do both shops and save the company a substantial amount of money.

xlvii)  Mr. Kehner has not hired any lot attendants in his Service Department since Plaintiff was laid off.

xlviii) Mr. Kehner's department has saved and continues to save money every month as a result of Plaintiff's position having been eliminated.

xlix)   Other employees of Foulke Management Corp. have taken FMLA leave and were returned to their positions.

l)      Defendant did not perceive Plaintiff to be unable to perform his prior job duties because of a disability.

li)     The elimination of Plaintiff's position had nothing to do with a disability or his exercise of FMLA leave.

lii)    Other employees are disabled and/or exercised FMLA leave and returned to their position that was not eliminated.

liii)   Defendant acted in good faith when it eliminated Plaintiff's position.


2. Defendant intends to prove the following contested facts with regard to damages:

   a. Plaintiff has failed to mitigate his damages by failing to meaningfully seek equivalent replacement employment.

   b. Plaintiff has failed to actively pursue full-time employment.

   c.  Plaintiff failed to reapply for a lot man position with Foulke Management Corp. after he was laid off even though positions were available.

   d.  Defendant had a legitimate economic business reason for eliminating Plaintiff's position.

   e.  Plaintiff has admitted that he did not actively seek any employment in January 2015, and February and sought employment for the first time in March 2015.

   f.  Then Plaintiff stopped looking for a job in April and May 2015 because his wife's boss told him he would be hired in June 2015.

   g.  Plaintiff accepted a part-time job in June 2015 and took no steps to obtain a full-time job thereafter.

   h.  Defendant's conduct was not malicious or willful and wanton or so egregious as to warrant punitive damages. The FMLA permits an employer to eliminate a job, notwithstanding that the person holding that job has exercised leaved under the FMLA.

**Part V.**       <u>Witnesses and Summary of Testimony</u>

Only witnesses whose <u>names and addresses</u> are listed herein will be permitted to testify at the time of trial.  For each witness listed, there must be a <u>description of their testimony</u>.  Any objection to a witness must be noted by opposing counsel and for each such witness objected to, the name of the witness and the reason for the objection shall be given.

A. <u>Plaintiff's Witnesses and Summary of Their Testimony</u>

1. Plaintiff intends to call the following witnesses with regard to liability and anticipates they will testify as follows:

    a. Plaintiff Jeffrey Ferren, 635 Walnut Street, Camden, NJ will testify regarding his employment with the Defendant, his injury and disability, his need for leave, his exercise of medical leave, his communications with Defendant's representatives, and his termination.

    b. Charles Foulke III, employed in Cherry Hill, NJ, will testify regarding Plaintiff' employment with Defendant, Plaintiff's medical leave, Defendant's policies regarding medical leave, his communications with Plaintiff, Plaintiff's termination, Plaintiff's replacement, and Defendant's hiring's.

    c. Christopher Kehner, employed in Cherry Hill, NJ, will testify regarding Plaintiff' employment with Defendant, Plaintiff's medical leave, Defendant's policies regarding medical leave, his

communications with Plaintiff, Plaintiff's termination, Plaintiff's

replacement, and Defendant's hiring's.

    d.  Amanda Parks, employed in Cherry Hill, NJ. will testify regarding

Plaintiff's employment with Defendant, Defendant's policies

regarding medical and FMLA leave, Plaintiff's disability and

medical leave, communications with the Plaintiff, Defendant's

subsequent hiring's, and the medical leaves or lack of by others in

Plaintiff's position.

    e.  Dr. Mark Schwartz, 204 Ark Road, Suite 105, Mt. Laurel, NJ

08054, will testify regarding his treatment and diagnosis of the

Plaintiff and the status notes he authored.

2.  Plaintiff intends to call the following witnesses with regards to damages

and anticipates they will testify as follows:

    a.  Plaintiff Jeffrey Ferren, 635 Walnut Street, Camden, NJ, will

testify regarding his economic loss and emotional pain and

suffering.

    b.  Jeannette Thomas Ferren, 635 Walnut Street, Camden, NJ, will

testify regarding plaintiff's economic loss and her observations and

knowledge of the plaintiff's emotional pain and suffering.

    c.  Jada Ferren, 635 Walnut Street, Camden, NJ, will testify regarding

her observations and knowledge of the plaintiff's emotional pain

and suffering.

d.  Ja'Ondra Thomas, 635 Walnut Street, Camden, NJ, will testify regarding her observations and knowledge of the plaintiff's emotional pain and suffering.

e.  Rayshan Thomas, 635 Walnut Street, Camden, NJ, will testify regarding his observations and knowledge of the plaintiff's emotional pain and suffering.

B.  <u>Defendant's Objections to Plaintiff's Witnesses:</u>

Defendant reserves the right to object to specific testimony by the witnesses.


C.  <u>Defendant's Witnesses and Summary of Their Testimony:</u>

1.  Defendant intends to call the following witnesses with regard to liability and anticipates they will testify as follows:

a.  Charles Foulke III, employed at 1805 Rt. 70 Cherry Hill, NJ, will testify regarding Plaintiff' employment with Defendant, Plaintiff's medical leave, Defendant's policies regarding medical leave, his communications with Plaintiff, the elimination of Plaintiff's position and his lay off and Defendant's hiring's.

b.  Christopher Kehner, employed at 1805 Rt. 70 Cherry Hill, NJ, will testify regarding Plaintiff' employment with Defendant, Plaintiff's medical leave, Defendant's policies regarding medical leave, his communications with Plaintiff, the reasons Plaintiff was laid off and the redistribution of Plaintiff's job duties.

    c.  Amanda Parks,  employed at 1805 Rt. 70 Cherry Hill, will testify

        regarding Plaintiff's employment with Defendant, Defendant's policies

        regarding medical and FMLA leave, Plaintiff's disability and medical

        leave, communications with the Plaintiff, Defendant's subsequent hiring's,

        and the medical leaves and return by others employees of Defendant.

    d.  Roberto Robles, 2729 Lincoln Ave., Camden NJ 08105 will testify regarding

        the additional job duties he took over and the time in which it takes him to

        complete those duties.

    e.  John Woodard, 235 Pine Wood Dr.,  Levittown PA 19054 will testify about

        the difference in the condition of the Mitsubishi shop when the cleaning was

        performed by Plaintiff and when performed by Mr. Robles.

    f.  Brian Carll, 126, 6th Ave,  Roebling NJ 08554 will testify about the difference

        in the condition of the Mitsubishi shop when the cleaning was performed by

        Plaintiff and when performed by Mr. Robles.


3.  Defendant intends to call the following witnesses with regards to damages

    and anticipates they will testify as follows:

        a.  Jeffrey Ferren, 635 Walnut Street, Camden, NJ who will testify

           concerning his failure to seek full-time replacement employment.

        b.  Chris Kehner, 1805 Rt 70, Cherry Hill, NJ who testify as to the

           business reasons for the elimination of Plaintiff's position and

           Plaintiff's failure to reapply for any position with Defendant.

    c.  Charles Foulke III, 1805 Rt. 70 Cherry Hill NJ who testify as to

the business reasons for the elimination of Plaintiff's position and

Plaintiff's failure to reapply for any position with Defendant.

D.   <u>Plaintiff's Objections to Defendant's Witnesses:</u>

Plaintiff has no objection to any of the specific witnesses identified by

Defendant at this time; however, Plaintiff reserves the right to object to

specific testimony by the witnesses.

**Part VI.**   <u>**Expert Witnesses**</u>

1. Plaintiff's expert witnesses are:  None.

2. Defendant's expert witnesses are: None.

3. Plaintiff's objections to the qualifications of defendant' expert witness are:
None.

**Part VII.**   <u>**Exhibits**</u>

In this section of the Final Pretrial Order, counsel should number each proposed

exhibit and upon receipt of the exhibit list of an adversary, opposing counsel should

prepare a response to the exhibit list indicating as to each exhibit whether there will be an

objection and if there is, the nature of the objection.  Absent an extraordinary showing of

good cause, <u>**ONLY THE EXHIBITS LISTED BELOW SHALL BE INTRODUCED**</u>

<u>**AT THE TIME OF TRIAL.**</u>  You are not required to list exhibits that will be used, if at

all, only for impeachment purposes.

Counsel are reminded that each such exhibit shall be physically pre-marked

corresponding to the designation below.  Copies of exhibit lists shall be provided to the

District Judge and the assigned court reporter at the time of trial.

A. <u>Plaintiff's Exhibits</u>

1. Plaintiff intends to introduce the following exhibits into evidence:

P-1    Notice of Eligibility and Rights & Responsibilities (Family and
       Medical Leave Act), J. Ferren 00001-2

P-2    Designation Notice (Family and Medical Leave Act), J. Ferren
       00003

P-3    12/29/14 Workers' Compensation Treatment and Work Status,
       J. Ferren 00004

P-4    October 27, 2014 Correspondence from Defendant, J. Ferren
       00005-6

P-5    Text message conversation, J. Ferren 00007-8

P-6    Defendant's Family and Medical Leave of Absence Policy, J.
       Ferren 00021-22

P-7    Operative Report, J. Ferren 00255-256

P-8    2/25/15 Workers' Compensation Treatment and Work Status,
       J. Ferren 00257

P-9    Employment Opportunities, J. Ferren 00258-259

P-10   2010 W2, J. Ferren 00260

P-11   2011 W2, J. Ferren 00261

P-12   2012 W2, J. Ferren 00262

P-13   2013 W2, J. Ferren 00263

P-14   2014 W2, J. Ferren 00264

P-15   2011 W2, Bethany Baptist Church, J. Ferren 00267

P-16    2013 W2, Bethany Baptist Church, J. Ferren 00268

P-17    2014 W2, Bethany Baptist Church, J. Ferrer 00269

P-18    Freedom Prep Charter School Paystubs, J. Ferren 00284-295

P-19    Bethany Baptist Church Paystubs, J. Ferren 0296-313

P-20    Text Message Conversation, Foulke 000001 4

P-21    Separation from Employment Form, Foulke 00005

P-22    Application for Employment, Foulke 000009-17

P-23    Payroll Status Start/Change Report, Foulke 00035

P-24    Payroll Status Start/Change Report, Foulke 000057

P-25    Payroll Status Start/Change Report, Foulke 000063

P-26    Payroll Status Start/Change Report, Foulke 00064

P-27    Payroll Status Start/Change Report, Foulke 00068

P-28    9/24/14 Workers' Compensation Treatment nd Work Status,
        Foulke 000177

P-29    10/27/14 Workers' Compensation Treatmen and Work Status,
        Foulke 000178

2.  Defendant objects to the introduction of plaintiff's e hibit:

    Defendant objects to Plaintiff's exhibits P10, P11, P12, P13, P14, P15,

    P16, P17, P18 and P19.  Plaintiff failed to turnover W-2's or tax returns

    for the years 2015-2016 that would show his actual income for the years

    he seeks lost wages and Plaintiff failed to turn over pay stubs after

    10/30/15. Defendant intends to make a motion in limine regarding

    Plaintiff's lost wage claim.

Defendant objects to P3, P7, P8, P28 as inadmissible hearsay.  Defendant

further objects to P-8 as having no relevance to the issues in this case.

B.  <u>Defendant's Exhibits</u>

    1.  Defendant intends to introduce the following exhibits into evidence:

      D-1       Text messages (Foulke000001-000004)

      D-2       Text messages (Foulke000006-000008)

      D-3       Plaintiff's employment application (Foulke000009-000015)

      D-4       Payroll status report (Foulke0000035)

      D-5       Written warning (Foulke000059)

      D-6       Written warning (Foulke000060)

      D-7       Written warning (Foulke 000061)

      D-8       Employee incident notices (Foulke000069)

      D-9       Family Medical Leave Notice (Foulke000109-000113)

      D-10     Notice of Unsatisfactory conduct (Foulke000124)

      D-11     Time off request form (Foulke000125)

      D-12     Time off request form (Foulke000126)

      D-13     Time off request form (Foulke000127)

      D-14     Time off request form (Foulke000128)

      D-15     Time off request form (Foulke000129)

      D-16     Time off request form (Foulke000130)

      D-17     FMLA letter (Foulke000142-147)

      D-18     Doctors Note (Foulke000197)

| D-19 | Termination Report (Foulke000005) |
|---|---|
| D-20 | Foulke job posting lot man (J.Ferren00258-0259) |
| D-21 | Plaintiff's Foulke W-2's 2010- 2014 (J.Ferren 00260-00264) |
| D-22 | Plaintiff's W-2's from Bethany Baptist Church 2008, 2009, 2011, 2013, 2014) (J.Ferren 00265-00269) |
| D-23 | Plaintiff's Freedom Prep paystubs from 5/15/17-10/30/15 (J. Ferren 00284-295) |
| D-24 | Plaintiff's Bethany Baptist paystubs from 3/27/16-10/30/15 (J.Ferren 00296-00313) |
| D-25 | 9/24/14 Worker's Comp Treatment and Work Status (Foulke 000177) |
| D-26 | 10/27/14 Worker's Comp Treatment and Work Status (Foulke 000178) |
| D-27 | Plaintiff's certified Answers to Interrogatories. |
| D-28 | Plaintiff's Complaint |
| D-29 | Document requests served on Plaintiff and Plaintiff's responses to same. |

2.  Plaintiff objects to the introduction of Defendant's exhibit:

Plaintiff objects to the introduction of D-5, D-6, D-7, D-8, D-10, D-11, D-12, D-13, D-14, D-15, D-16, D-27, D-28 and D-29.

Plaintiff objects to the introduction of D-5, D-6, and D-7 on the basis of relevance, prejudice, delay, and waste of time. These documents concern alleged work issues in 2005 and 2006, yet Plaintiff was not terminated until January 2015. There is no evidence in the record to suggest that performance issues which were almost seven years old served the basis of the termination, which defendant claims was on the basis of economics.   For the same reasons Plaintiff objects to the introduction of D-8 and D-10 which concerns alleged performance issues in 2007 and 2012 respectively.

Plaintiff objects to D-11, D-12, D-13, D-14, D-15, and D-16 which are a collection of Time Off Requests. These requests concern periods of time in February 2010, June 2010, June 2011, February 2012, and June 2013. Plaintiff objects on the

basis of relevance, prejudice, delay, and waste of time.   None of these have any bearing on Plaintiff's termination in January 2015.   On the other hand, the introduction of the same may confuse the jury or otherwise prejudice them against the Plaintiff.

Plaintiff objects to the introduction of D-27 Plaintiff's Answers to Interrogatories.  The introduction of this document has significant potential to confuse the jury in light of the number of questions and the inclusion of legal objections, drafted by counsel, not the party.  Additionally, the document potentially includes hearsay to the extent that it references and cites prior communications.  For the same reasons, Plaintiff objects to the introduction of D-29, document requests served on Plaintiff and Plaintiff's responses to the same.

Plaintiff objects to the introduction of D-28 the initial filed Complaint.  Admission of this pleading is likely to create unnecessary confusion for the jury.  The Complaint included several counts which were pled in the alternative to each other.  Federal Rule of Civil Procedure 8(d) permits alternative statements of a claim at the pleadings stage.  However, Counts I (Failure to Accommodate Disability Under the LAD), II (Failure to Engage in the Interactive Process Under the LAD), VII (Unlawful Discharge Under the FMLA) and VIII (Request for Equitable Relief) were subsequently dismissed.  Allowing the admissibility of the Pleading and allowing the jury access to the same could create substantial confusion and prejudice as to what claims exist and why only certain claims are being presented to the jury.

## Part VIII.   Law

### A. Plaintiff
1. Plaintiff's statement of the legal issues in the case:
   Whether Defendant violated Plaintiff's rights under the FMLA and/or LAD by terminating his employment.

### B. Defendant
1. Defendant's statement of the legal issues in the case

   Whether Defendant rightfully eliminated Plaintiff's position while he was out on FMLA leave.

   Whether Plaintiff can meet his burden to prove that Defendant's legitimate business reason for the elimination of Plaintiff's position was pre-textual and constituted disability discrimination in violation of NJLAD/FMLA.

   Has Plaintiff failed to mitigate his damages, if any.

**Part IX.**     <u>**Miscellaneous**</u>

    A.    Punitive Damages Discovery

        Defendant shall prepare punitive damage discovery responses to include: Profit and Loss Statements and/or other similar financial statements for 2011-2016 to the extent same exist and state and federal tax returns, along with schedules, for 2011-2016. Defendant shall have the same in a sealed envelope at the time of trial and shall immediately produce the same as ordered by the Court, if there is a liability verdict and the punitive damages claim is still remaining in the case at that time.

        Defendant has the right to make the appropriate objections to the punitive damages discovery sought by Plaintiff.

    B.    Plaintiff's Documentary Evidence of Wages Earned

        Plaintiff shall, within ten days of the entry of this Order, produce all W2s and tax returns, within his possession, for the years 2015 and 2016. In addition, Plaintiff will turn over all pay stubs for the year 2017 to date. Upon production of the same Plaintiff may mark such documents as exhibits to be used at the time of trial. Such designation shall be without prejudice to Defendant's right to object to admissibility of the same.

        Defendant reserves the right to object to the admission into evidence of any document produced after the date of this Order. Further, depending upon what information is produced by Plaintiff, Defendant reserves the right to file a motion in limine to bar Plaintiff's claims for lost wages.

C.      Plaintiff's Motions in Limine

1.      Motion in Limine to Bar Reference to Employee Discipline Reports Which Predate Plaintiff's Termination by Years

As set forth in Plaintiff's objections to Defendant's proposed exhibits, Plaintiff objects to documents concerning alleged work performance issues which predate Plaintiff's termination by a period as long as seven years.   There was no such documentation issued during Plaintiff's final three years and there has been no proffer that any of these performance issues specifically gave cause to the termination.  These documents concern alleged work issues in 2005, 2006, 2007 and 2012, yet Plaintiff was not terminated until 2015.  Accordingly, Plaintiff moves that they be barred under Rules of Evidence 401 and 403.

Defendant asserts that the documents are relevant to Defendant's defense to Plaintiff's claims.  However, without having the benefit of Plaintiff's motion, Defendant reserves the right to respond as appropriate upon receipt of Plaintiff's proposed motion in limine.

2.      Motion in Limine to Bar Reference to Plaintiff's Unemployment Benefits

It is anticipated that Defendant may make reference to Plaintiff's unemployment benefits in relation to the quantum of his economic damage.  However, the New Jersey Appellate Division has recently held that an employer is not entitled to an offset for unemployment compensation against a lost wages award.  *Acevedo v. Flightsafety Intl, Inc.*, 2017 WL 875281 (App. Div. March 6, 2017).   "Shifting the benefit of unemployment compensation from the wronged employee to the discriminating employer does not serve the LAD's deterrent purpose." *Id.* at *3. *See als: NLRB v. Gullett Gin Co.*, 340 U.S. 361 (1951) (upholding the NLRB's refusal to deduct unemployment compensation from back pay award); *Craig v. Y & Y Snacks, Inc.* 721 F. d 77 (3d. Cir. 1983) (holding that unemployment benefits should not be deducted from a back pay award under Title VII).  Accordingly, Plaintiff moves that reference to his unemployment benefits be barred at trial.

Defendant reserves the right to respond as appropriate upon receipt of Plaintiff's proposed motion in limine.

3.      Motion in Limine to Bar Reference to the Dismissed Claims in the Complaint

As set forth above, Counts I, II, VII and VIII were dismissed at Summary Judgment.  Plaintiff now moves to bar reference to those filed claims and to exclude evidence of the filing.  General pleading allows for a party, acting in good faith, to file multiple and alternative claims regardless of consistency and allow for discovery and other motions, such as summary judgment to define the main issues of the case. See *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 805 (1999); Fed. R. Civ.

P. 8(d)(2). Such evidence has little to do with establishing liability and is of little probative value but instead carries significant risk of undue delay and waste of time such that is should be excluded under Rule of Evidence 403.

The case law cited by Plaintiff does not support his requested relief. Defendant asserts that Plaintiff's position is not supported by existing law. Defendant reserves the right to respond as appropriate upon receipt of Plaintiff's proposed motion in limine.

D.     Defendant's Motions in Limine.

1.    Motion in Limine to Bar Plaintiff's Claim for Lost Wages.

Plaintiff is seeking lost wages damages in this case, but Plaintiff has failed to turn over any tax returns or W2's for 2015 or 2016, the time period for which he is seeking lost wages, despite discovery requests for same. Further, Plaintiff has only turned over pay stubs in discovery back to October 2015. As a result Defendant intends to file a motion in limine barring Plaintiff from seeking lost wages for the time period for which he failed to provide proof of his income as sought in discovery.

Plaintiff will await the motion before responding in full but anticipates that any such motion will be misplaced and unsupported by law. Plaintiff further notes that Defendant has never engaged in any action before the Court, either by way of informal application or motion, to compel such production.

2.    Motion in Limine to bar Jennette Thomas Ferren, Jada Ferren, Ja'Ondra Thomas, and Rayshan Thomas from giving opinion testimony.

Plaintiff has identified Jennette Thomas Ferren, Jada Ferren, Ja'Ondra Thomas, and Rayshan Thomas as having knowledge of Plaintiff's emotion pain and suffering. These individuals are not experts and have not been identified in discovery as expert witnesses. Accordingly, they cannot give an opinion on Plaintiff's claim of emotional pain and suffering under 701 and 702.

3. Motion in limine to bar P-8

Plaintiff seeks to introduce into evidence a note from Plaintiff's physician dated 2/25/15 regarding his status. Plaintiff was laid off on January 5, 2015. This note is not admissible under 403. Its admission will cause confusion as Plaintiff appears to be using it for the purpose of showing that he was disabled on January

5, 2015. The court has dismissed Plaintiff's claims of failure to accommodate under NJLAD and the admission of this post lay-off doctors note's probative value is substantially outweighed by prejudice and could confuse and mislead the jury on the issues.

**Part X.**      **Jury Trials**

No later than seven days prior to the scheduled trial date or at such time as the court may direct:

1. Each party shall submit to the District Judge and to opposing counsel a trial brief or memorandum with citations and authorities and arguments in support of the party's position on all issues of law. The trial brief shall be electronically filed.

2. Each party shall submit to the District Judge and to opposing counsel written requests for charges to the jury. Supplemental requests to charge that could not have been anticipated may be submitted any time prior to the arguments to the jury. All requests for charge shall be on a separate page or pages, plainly marked with the name and number of the case; shall contain citations of supporting authorities; shall designate the party submitting same; and shall be numbered in sequence.

   If you have the capability, the Proposed Requests or Charge should be submitted on computer disk, Word Perfect format. All proposed requests for charges shall be electronically filed, and paper copy must also be provided.

3. Each party shall submit to the judge and to opposing counsel proposed voir dire questions.

   Each of these items is to be filed prior to the first trial date even if the case is continued. Counsel are on notice that failure to provide timely compliance with the requests of Part X and XI may result in the postponement of trial and the assessment of juror and other costs and/or the imposition of sanctions.

<u>Concluding Certification</u>

We hereby certify by the affixing our signatures to this Final Pretrial Order that it reflects the efforts of all counsel and that we have carefully and completely reviewed all parts of this Order prior to its submission to the Court.  Further, it is acknowledged that amendments to this Joint Final Pretrial Order will not be permitted except where the Court determines that manifest injustice would result if the amendment is not allowed.

Attorney for Plaintiff:

_____
Daniel T. Silverman, Esquire

Attorney for Defendant

_____
Laura J. Ruccolo, Esq.

Entry of the foregoing Joint Final Pretrial Order is hereby APPROVED this 24ᵗʰ day of _____April_____, 2017.

_____
Hon. Ann Marie Donio
United States Magistrate Judge
United States District Court
For the District of New Jersey